UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RONALD DUMAS,

    Plaintiff,

    v.

NEW UNITED MOTOR MANUFACTURING INC., and DOES 1-20,

    Defendant.

_____/

No. C 05-4702 PJH

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    Defendant New United Motor Manufacturing Inc.'s ("NUMMI" or "defendant") motion for summary judgment came on for hearing on March 7, 2007, before this court. Kamili Williams Dawson appeared on behalf of defendant and Elaine Morinelli appeared on behalf of plaintiff. Having read the parties' papers and considered their arguments and the relevant legal authorities, and good cause appearing, the court GRANTS the motion for the reasons stated as follows.

## INTRODUCTION

    This is an employment discrimination case. Plaintiff was employed by defendant from 1988 until 2003 when he was involuntarily terminated. *See* Amended Complaint ¶ 6-7. He was reinstated in 2004. Plaintiff alleges in his complaint that his termination was the result of discrimination and retaliation. Specifically, he alleges causes of action for: 1) race discrimination in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Govt. Code § 12900, et seq., 2) wrongful termination in violation of public policy, 3) breach of the covenant of good faith and fair dealing, 4) intentional infliction of emotional distress, 5) negligent infliction of emotional distress, 6) unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, 7) retaliation in violation of FEHA, and 8) retaliation in violation of the California Family Rights Act (CFRA), Cal. Govt. Code § 12945, et seq. Plaintiff also

alleges that defendant acted with malice and oppression and, accordingly, he seeks punitive damages.  *See* Amended Complaint ¶ ¶ 27-68.

## BACKGROUND

Defendant manufactures trucks and automobiles at a facility in Fremont, California. Plaintiff began working for defendant in 1988.  *See* Amended Complaint ¶ 6.  The terms and conditions of plaintiff's employment were governed by a Collective Bargaining Agreement (CBA) between defendant and plaintiff's union, the United Auto Workers. Plaintiff alleges that in June of 2002, he began having problems with a member of NUMMI management, John Marshall.[1]  *Id.* at ¶ 9.  On June 19, 2002, plaintiff allegedly approached Marshall, complained that another employee, Sebastian Gonzalez, was harassing him and asked Marshall to contact his union regarding this issue.  Marshall allegedly told plaintiff to return to work.  *Id.* at ¶ 10.  On June 20, 2002, Marshall allegedly approached plaintiff and gave him a directive regarding the presence of dollies in his work area.  Plaintiff refused to follow Marshall's directive and Marshall walked plaintiff to the front of the manufacturing plant to meet with the Assistant Plant Manager Robert Contreras.  Plaintiff met with Marshall, Contreras, his committeeman and another NUMMI employee for twenty minutes. *Id.* at ¶ 11.

A number of meetings regarding plaintiff's alleged insubordination followed in June and July of 2002.  Plaintiff alleges that at one of these meetings Manuel Valdes, a NUMMI management representative, pointed in plaintiff's face and threatened him with suspension if he left the meeting.  *See* Amended Complaint ¶ ¶ 17,18.  Plaintiff went out on stress leave on July 11, 2002, and returned to work on or around July 23, 2002.  *Id.* at ¶ 23.  In August 2002, plaintiff filed a grievance accusing defendant of violating the CBA.  *See* Declaration of Kamili Williams Dawson ("Dawson Decl."), Ex. E.  In November 2002, plaintiff filed a complaint against NUMMI with the National Labor Relations Board ("NLRB")

---

[1] The "facts" are based on allegations in plaintiff's amended complaint as he provided no evidence of any facts.

2

alleging that he had been denied union representation during one of the June/July 2002 meetings.  *See* Dawson Decl., Ex. F.

In late January through early February 2003, plaintiff was absent from work for a number of days.  *See* Deposition of Ronald Dumas ("Dumas Dep.") at 195-208, Dawson Decl., Ex. B.  On February 10, 2003, NUMMI informed him that he was being terminated for failing to report to work within six consecutive days in violation of the CBA.  *See* Dawson Decl., Ex. I.  Plaintiff alleges that his absence was permissible under the CBA because he had been approved for intermittent CFRA/FMLA leave to care for his son.  *See* Amended Complaint ¶ 22.  After receiving the termination letter, plaintiff immediately filed a grievance with his union alleging that NUMMI had violated the CBA.  *See* Dawson Decl., Ex. J.  In November 2003, plaintiff filed a complaint against NUMMI with the Department of Labor ("DOL") wherein he alleged that he was terminated in retaliation for taking protected CFRA/FMLA leave.  *See* Dumas Dep. 303-307, Dawson Decl., Ex. B.  This DOL complaint was resolved in March of 2004 when plaintiff signed a release of claims and accepted back pay and reinstatement.  *See* Dawson Decl., Exhibit M.  The grievance was settled in April 2004 and plaintiff was reinstated with seniority and back pay.  Dawson Decl., Ex K.

After plaintiff's termination and while his union grievance and DOL complaint were both pending, plaintiff filed for bankruptcy in July 2003 in U.S. Bankruptcy Court in the Northern District of California.  He subsequently filed a complaint with the Department of Fair Employment and Housing ("DFEH") on February 5, 2004.  In his DFEH complaint, plaintiff charged that he had been fired, harassed, denied accommodation, and denied family or medical leave due to his race, association, union activities, and in retaliation.  *See* Dawson Decl., Ex O.  According to the amended complaint, he was issued a right to sue notice the next day.  Amended Complaint ¶ 5.  In his bankruptcy filing, plaintiff listed his assets and liabilities, however, he omitted as an asset, any potential claim against NUMMI.  *See* Dawson Decl., Exs. N & P.  The bankruptcy court refused to discharge plaintiff's debts and his bankruptcy file was closed in March 2004.  *See* Dumas Dep. 348:8-19, Dawson

Decl., Ex. B. He filed the amended complaint in the Alameda County Superior Court on September 29, 2005, and defendant removed the case to this court on November 16, 2005.

## DISCUSSION

**A.     Legal Standards**

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and the discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the court that there is an absence of evidence to support the nonmoving party's case. *Id.* If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *Anderson*, 477 U.S. at 250.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 250. "To show the existence of a 'genuine' issue . . . [a plaintiff] must produce at least some significant probative evidence tending to support the complaint." *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990). The court must view the evidence in a light most favorable to the nonmoving party. *United states v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir. 2003). The court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. *Balint v. Carson*

*City*, 180 F.3d 1047,1054 (9th Cir. 1999).

Deference to the nonmoving party has some limits.  Thus, a plaintiff cannot rest on the allegations in her pleadings to overcome a motion for summary judgment.  *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995).  Self-serving affidavits will not establish a genuine issue as to material fact if they fail to state facts based on personal knowledge or are conclusory.  *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001).  If the nonmoving party fails to show that there is a genuine issue of fact for trial, "the moving party is entitled to judgment as a matter of law."  *Celotex*, 477 at 323.

Regardless of whether plaintiff or defendant is the moving party, each party must "establish the existence of the elements essential to [its] case, and on which [it] will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 332.

A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition.  *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994).  However, a district court may grant an unopposed motion for summary judgment if the moving party's papers are themselves sufficient to support the motion and do not on their face reveal a genuine case of material fact.  *United States v. Real Property at Incline Village*, 47 F.3d 1511, 1520 (9th Cir. 1995), rev'd on other grounds sub nom *Degen v. United States*, 116 S.Ct. 1777 (1996); *Henry v. Gill Indus.*, Inc., 983 F.2d 943, 950 (9th Cir. 1993).

**B.     Defendant's Motion**

   **1.     The Briefing**

Plaintiff asserts eight causes of action against defendant and defendant has moved for summary judgment as to all of them and the prayer for punitive damages.  As expected, defendant's points and authorities is twenty three pages long and its evidence in support of the motion is voluminous.  In response, plaintiff has filed an opposition brief that, excluding table of contents and authorities, is 4 ½ pages long.  Roughly 2 ½ pages are devoted to the issue of judicial estoppel, leaving roughly 2 pages in which to oppose defendant's

arguments on the merits of all eight causes of action. Plaintiff does not even mention three of his causes of action or punitive damages and, thus, defendant's motion is unopposed as to them. The argument as to the remaining five claims is exceedingly skimpy. Plaintiff submitted only one declaration, and it is inadmissible for reasons that are set forth below. Plaintiff has not even submitted his own declaration or deposition excerpts. At the hearing, plaintiff offered little argument to illuminate his papers or refute defendant's evidence. Given this woefully inadequate response to defendant's motion, the court is baffled by the conclusion in plaintiff's opposition brief that, "Plaintiff has met his burden in making a prima facie case as to all of his causes of action, and respectfully requests that Defendant's motion for summary judgment be denied."

### 2. Effect of Plaintiff's Bankruptcy Filing

Preliminarily, defendant argues that all of plaintiff's claims are barred by the doctrine of judicial estoppel because he failed to list them as assets when he filed for bankruptcy in July 2003. Defendant alleges plaintiff was aware that he had potential claims against NUMMI when he filed for bankruptcy because he had already filed the grievance against NUMMI with his union and informed his doctor that he intended to sue NUMMI for harassment. Defendant also contends that after plaintiff filed his DOL complaint in November 2003 and DFEH complaint in February 2004, he was obligated to amend his bankruptcy petition to include these potential claims on his schedule of assets and his failure to do so bars those claims as well. Plaintiff, on the other hand, argues that any non-disclosure of these claims was harmless because the bankruptcy court did not discharge his debts.

Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position and then later seeking an advantage by taking an inconsistent position. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001). In the bankruptcy context, a party will be judicially estopped from asserting a cause of action not disclosed in the debtor's schedule of assets. *Hay v. First Interstate*

6

*Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992) (plaintiff is estopped from bringing claim because he did not list the claim in his bankruptcy schedule and sufficient information was known about the potential claim for him to disclose it).  The party asserting the estoppel argument and seeking to bar a claim must demonstrate: 1) the party asserting the claim failed to disclose a claim which was available to him while the bankruptcy proceedings were open, and 2) a court relied on the party's asset disclosure schedule when taking judicial action.  *See Hamilton*, 270 F.2d at 782-83*.*

Although the first prong is clearly satisfied by the record, defendant presents no evidence to satisfy the second prong.  The Ninth Circuit has held that a court can rely on a party's disclosures in a number of ways including approving a debtor's reorganization plan and imposing or lifting a bankruptcy stay, and that the discharge of debts is not a prerequisite for satisfying the reliance prong.  *Id.*  While defendant argued at the hearing that the bankruptcy court did rely on plaintiff's deficient disclosures in rearranging his debt, imposing a stay, and approving a debtor's plan, defendant pointed to no evidence of record in support of this argument, and the bankruptcy court's reliance is not readily apparent to this court from the few bankruptcy documents attached to the Dawson declaration.  Accordingly, the court finds that defendant has failed to meet its burden of proof as to the applicability of the judicial estoppel doctrine.

### 3.  Wrongful Termination in Violation of Public Policy, Breach of Covenant of Good Faith and Fair Dealing, Retaliation in Violation of CFRA

Defendant argues that plaintiff's wrongful termination in violation of public policy and breach of covenant of good faith and fair dealing claims are barred by the settlement of his union grievance, and that his CFRA/FMLA claim is barred by the settlement of his DOL complaint, as those two settlements released defendant from liability for these three claims.  In his opposition brief plaintiff does not challenge defendant's assertion, rather he argues only that the two settlements do not bar his discrimination claim or retaliation claims arising under FEHA, a position that defendant has not taken.  Specifically, his brief says that by

signing the two settlement agreements, he did not waive any cause of action for discrimination under "Title VII" or retaliation "outside the FMLA."[2]

As noted plaintiff does not challenge in his papers defendant's evidence that the three above-captioned claims were settled or that he is, therefore, barred from pursuing them in this litigation. Plaintiff's breach of the covenant of good faith and fair dealing claim is a contract claim based on plaintiff's allegation that defendant violated the CBA when it terminated him. The allegation that defendant violated the CBA was settled through the union grievance process when plaintiff accepted back pay and reinstatement with seniority. Dawson Decl., Ex. K. Moreover, because plaintiff accepted back pay and reinstatement, he has suffered no contract damages and therefore has no remedy in contract law. Plaintiff's wrongful termination in violation of public policy claim is also barred for this reason. While neither plaintiff's pleadings nor brief identify the public policy that defendant allegedly violated when it terminated plaintiff, at the hearing plaintiff's counsel stated that this claim too rested on defendant's alleged violation of the CBA. Because the union grievance process settled plaintiff's claims related to defendant's alleged violation of the CBA this claim is therefore also barred. Moreover, because both claims are based on the contract, plaintiff would not be entitled to tort damages, as he suggested at the hearing.

Plaintiff's claim that defendant violated the CFRA because it terminated him in retaliation for taking protected family medical leave is barred because he released this claim when he signed the DOL settlement agreement. The language of the DOL settlement document is broad and states that by accepting the settlement plaintiff is giving up his right under the FMLA to bring suit for "lost or denied wages, salary, employment benefits, or other compensation." *See* Dawson Decl., Ex. M. The FMLA is the federal

---

[2] The court interprets the former reference as one to FEHA rather than Title VII, as the amended complaint contains no mention whatsoever of Title VII, rather all claims are pleaded under state law. With regard to the reference to the FMLA, the federal equivalent of the CFRA, the parties use the acronyms interchangeably, and the court does likewise.

counter-part to the CFRA and FMLA is incorporated into the CFRA.  *Pang v. Beverly Hospital, Inc.,* 79 Cal. App. 4th 986, 993 (2000).  Accordingly, plaintiff released *all* FMLA and CFRA related claims when he signed the settlement and his claim here that defendant violated the CFRA is therefore barred.

### 4.     Violation of California Business & Professions Code Section 17200.

Plaintiff also alleges in his complaint that defendant violated California Business and Professions Code §17200.  Defendant states that §17200 is inapplicable in this case because it is intended to protect businesses and consumers from unfair competition and is not intended to protect against the type of harm plaintiff alleges to have suffered.  Defendant is correct that nothing in the language of §17200 suggests that the statute provides a remedy for wrongful termination and plaintiff does not identify any cases where the statute has been interpreted to provide a remedy for this type of claim.  In fact, plaintiff's opposition brief fails to address this issue at all.  At the hearing, plaintiff confirmed that the claim was conceded.

### 5.     Race Discrimination in Violation of FEHA

Plaintiff alleges that NUMMI violated FEHA by discriminating against him because he is African American.  The complaint does not specify which acts by defendant were discriminatory, but instead incorporates by reference all factual allegations in the complaint.  His opposition brief is similarly lacking in details.  Although defendant's argument is quite specific and relies for the most part on plaintiff's own deposition, plaintiff's opposition devotes a mere fourteen lines to his discrimination claim, making it almost impossible for the court to evaluate his argument; and of course, he has chosen to submit virtually no evidence.

As best the court can tell, plaintiff's discrimination claim is based upon allegations that he was antagonized by Valdes and Marshall and ultimately terminated because of his race.  Defendant believes that plaintiff is also relying on his treatment after he was reinstated.  According to defendant, plaintiff testified that from the time of his reinstatement

9

in February 2004 to May 2005, he was subjected to undue supervisory scrutiny and treated unfairly because of his race. Specifically, he testified that: 1) he was singled out for failing to plug in his work vehicle for recharging while other non-African Americans were not, 2) Latinos were treated favorably because they were allowed to take Monday as a suspension day but African American employees were not, 3) he heard that defects of African American employees were tracked while those of non-African Americans were not, 4) he heard that Valdes disciplined African Americans differently than non-African Americans, 5) he heard that Pete Salcido, a NUMMI manager, resolved the grievances of non-African Americans more favorably, and 6) he heard that another African American was criticized about housekeeping, but did not know if other nationalities were as well. *See* Brief in Support of Defendant's Motion for Summary Judgment, at 9-10; Dumas Dep. at 105-118, 355-56, Dawson Decl., Ex. B.

Putting aside the admissibility issues raised by the hearsay nature of most of plaintiff's allegations and the absence of any evidence that they are based on plaintiff's personal knowledge, plaintiff's opposition brief contains absolutely *no* argument with respect to these allegations. Plaintiff does not even cite the standard for a prima facie case nor does he explain how he satisfies that standard, yet nonetheless concludes that he has established a prima facie case for race discrimination. Plaintiff does not even submit his own declaration on this claim. The *only* evidence that plaintiff submitted is the declaration of Patrick Turner, another NUMMI employee who states that he believes NUMMI management is racially prejudiced and that he has witnessed NUMMI managers use racial slurs. He gives several examples of how he was unfairly treated, but does not refer to plaintiff's treatment at all. *See* Declaration of Patrick Turner in Opposition of Defendant's Motion for Summary Judgment ("Turner Decl."), ¶¶ 5, 22-24.

Defendant argues that plaintiff cannot establish a prima facie case for race discrimination. The court agrees.

The framework for proving race discrimination is well-established. First, an

10

employee bears the initial burden of establishing a prima facie case of unlawful discrimination. A prima facie case requires that the employee demonstrate: (1) that he or she is a member of a protected class, (2) was performing according to his or her employer's legitimate expectations, (3) suffered an adverse employment action, and (4) that other employees with qualifications similar to his or her own were treated more favorably. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 354 (2000). Second, if the employee produces sufficient evidence to establish a prima facie case, the burden shifts to the employer-defendant to articulate a "legitimate nondiscriminatory reason" for the adverse employment action. *See Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). Finally, if the employer is able to articulate a legitimate nondiscriminatory reason for its action, this dispels the inference of discrimination raised by plaintiff's prima facie case, leaving the employee with the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against the employee. A plaintiff employee may satisfy this burden by proving that the legitimate reason offered by defendant was factually untrue, thereby creating an inference that the reason was merely a pretext for discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142 (2000). Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying California statutes. *See Guz*, 24 Cal.4th at 354.

With respect to the first prong of the prima facie case, it is undisputed that plaintiff, an African American, is a member of a protected class. With respect to the second prong, defendant bases its argument that plaintiff was not performing according to his employer's legitimate expectations, on plaintiff's alleged unexcused absences in January and February 2003. However, while defendant terminated plaintiff for these absences, plaintiff filed a grievance challenging his termination action and was reinstated with back pay and seniority. The reinstatement followed the settlement of plaintiff's grievance and the details of the settlement are unknown; however, the reinstatement suggests that plaintiff's

11

performance was sufficiently satisfactory as to permit his return to duty.   The fact that defendant reinstated plaintiff is sufficient to create a factual dispute on this question and plaintiff therefore satisfies this prong of the *McDonnell Douglas* test.  Plaintiff did not actually make this argument, but agreed at the hearing with the court's analysis.

With respect to the third prong, as previously noted, plaintiff has not identified the adverse action in either his complaint or opposition brief.  Defendant's argument is based on plaintiff's deposition testimony in which he complained about his 2003 termination and the incidents described above which allegedly took place after his reinstatement from February 2004 to May 2005.  An adverse employment action is an action that has a "substantial and material" consequence.  Examples of adverse employment actions include termination of employment, demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits or diminished responsibilities.  *See Thomas v. Dept. of Corrections*, 77 Cal.App.4th 507, 511-12 (2000).  Courts have cautioned against setting the bar too low and have stated that changes in duties or working conditions that cause no material disadvantage are insufficient to establish the adverse action requirement for the prima facie case.  *See Id.* at 510-12; *Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir. 1994).

The 2004 incidents plaintiff testified about in his deposition, do not constitute adverse employment actions because plaintiff presents no evidence that he suffered a material disadvantage because of these incidents.  He does not allege or produce evidence that he was demoted, given diminished responsibilities or suffered any loss in benefits or wages.  However, plaintiff's termination in 2003 does constitute an adverse action. Defendant's reinstatement of plaintiff with back pay and seniority does not serve to eliminate the termination as an adverse action because there may be other harm that flows from a termination in addition to contract damages.  Accordingly, plaintiff meets this prong of the *McDonnell Douglas* test.

However, plaintiff presents no admissible evidence which satisfies the fourth prong

12

of the *McDonnell Douglas* test.  Neither plaintiff's complaint nor opposition brief identifies *any* evidence which demonstrates that other employees with similar qualifications were treated differently than plaintiff with respect to the reasons for his termination.  As noted, the only evidence that plaintiff referred to in his brief or at the hearing is the declaration of Patrick Turner, a NUMMI employee who claims that NUMMI managers are prejudiced and that he heard some managers use racial slurs – none of which were directed at or about plaintiff.  The Turner declaration, however, is irrelevant and immaterial to the claims before the court.  In his declaration, Turner discusses his belief that NUMMI managers are prejudiced against him because he is African American, however, nothing in his declaration alleges that he witnessed or has first hand knowledge of any discriminatory behavior directed at plaintiff.  *See* Turner Decl. ¶¶ 5, 22-24.  Additionally, nothing in the Turner declaration is probative on the issue of whether other non-African Americans with similar qualifications as plaintiff were not terminated upon missing six consecutive days of work.  Because plaintiff has not identified *any* evidence which would satisfy his burden on the fourth prong, plaintiff has not established a prima facie case of race discrimination under FEHA.

### 6. Retaliation in Violation of FEHA

The complaint asserts that during his employment with defendant, plaintiff filed "various grievances through his union and defendant's labor relations office," and that defendant retaliated against plaintiff for lodging those grievances.  Amended Complaint ¶ 60.  Defendant moves for summary judgment on the ground that plaintiff can establish neither a prima facie case nor pretext.  Plaintiff does not oppose this part of the motion in his opposition brief; he does not even mention it.

A FEHA retaliation claim is analyzed using the same three-part burden shifting analysis used to analyze a FEHA discrimination claim.  *Miller v. Fairchild Industries, Inc.,* 797 F.2d 727, 730-31 (9th Cir.1986) (order and allocation of proof for retaliation claims follows scheme announced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, (1973)).

13

First, in order to make out a prima facie case for retaliation, a plaintiff must establish that he acted to protect his constitutional or statutory rights, that an adverse employment action was thereafter taken against him, and that a causal link exists between those two events. Second, if plaintiff makes out a prima facie case, defendant must articulate a legitimate nonretaliatory reason for the adverse action. Finally, if defendant is able to do so, plaintiff then must produce evidence suggesting the articulated reason is false and was a pretext for discrimination. *See Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1465 (9th Cir. 1994).

In its moving papers, defendant sets forth plaintiff's complaint history as including: a union grievance in August 2002, an NLRB complaint in November 2002, a union grievance after being terminated in February 2003, and a DOL complaint in November 2003. And although plaintiff fails to identify any adverse action, defendant relies on the 2003 termination and the post-reinstatement actions referred to by plaintiff in his deposition. As discussed above in the FEHA discrimination section of this order, only plaintiff's termination qualifies as an adverse employment action. Based on the record before the court, the only protected activity plaintiff engaged in *before* his February 10, 2003 termination, was the union grievance filed on August 2, 2002, and the NLRB complaint filed in November 21, 2002; the other two complaints having been made *after* his termination. Therefore, the question is whether there is evidence of a causal link between the filing of these two complaints and his termination. A causal link can be inferred from circumstantial evidence such as the proximity in time between the protected activity and the alleged retaliatory employment decision. *See Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988).

Defendant argues that there is nothing about the period of time between the complaints and the termination that suggests a causal link. As plaintiff has chosen not to oppose this argument in his brief, he has not suggested what the causal link might be. However, given that there are numerous cases finding that various time periods between the protected activity and the adverse action, from several weeks up to six months are

14

sufficiently close to establish proximity, the court finds that a triable issue exists on the causal link. *See e.g., Yartzhoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987); *Miller* 797 F.2d at 730.

A finding that a causal link is apparent shifts the burden to defendant to articulate a legitimate nonretaliatory reason for plaintiff's termination. Defendant provides a legitimate nonretaliatory reason for plaintiff's termination, which is supported by undisputed facts including the following: The collective bargaining agreement provides that seniority will be lost and employment will cease upon a failure to report to work within six consecutive working days without a company-approved leave of absence unless unusual conditions or circumstances exist. *See* Dawson Decl. Ex. C, p. 28-29. Plaintiff was absent for six consecutive days without having obtained a leave of absence; he was aware of the requirement for a leave of absence; he was reminded of the requirement on each of the days he failed to report; and he had previously obtained as many of 17 leaves of absence. The relevant section of the CBA was cited in the termination letter and plaintiff was invited to report, within a specified time frame, any unusual conditions or circumstances which may have prevented him from reporting to work. *See* Dawson Decl., Ex. I.

The court finds that the clear language of the CBA, of which plaintiff was aware and which he undisputably violated, is a legitimate nonretaliatory reason for plaintiff's termination. Thus, the burden shifts to plaintiff to establish that the legitimate reason was really a pretext for retaliation. Because plaintiff did not oppose the motion, he presented no evidence of pretext. At the hearing, however, plaintiff argued in essence that the reinstatement following settlement of his grievance undermined the legitimacy of the reason for his termination. The court has considered this argument but rejects it for several reasons. First, plaintiff submits no evidence to support this new theory. It was raised for the first time at the hearing with no opposition previously being lodged at all by plaintiff and affording no opportunity for defendant to refute it with evidence of its own. Second, although the details of the settlement were not presented to the court, there was no

15

admission of liability or mistake on defendant's part in interpreting the CBA. Grievances, like law suits, are settled all the time for reasons other than wrongdoing by the settling defendant. If there was evidence that defendant somehow misread or misapplied the CBA to plaintiff's admitted absences, it was incumbent on plaintiff to submit it in order to establish the non-legitimacy of defendant's reason. It is simply not enough for plaintiff to argue, without evidence, that the settlement somehow undermines the reason, and thereby avoid his burden of proving that the reasons were pretextual. In short, it is impossible for the court to find that plaintiff can meet his burden of proof by mere argument and innuendo, particularly given that plaintiff is represented by counsel, has failed to even address much of his own case, and has chosen to submit virtually no evidence. Rhetoric is not a substitute for evidence on a motion for summary judgment.

**7.     Negligent and Intentional Infliction of Emotional Distress**

Plaintiff alleges in his complaint that he suffered severe emotional distress as a result of all of defendant's acts and omissions. *See* Amended Complaint ¶¶ 42-52. Defendant moves for summary judgment on both claims, arguing the absence of evidence to support the claims and preemption. Again, plaintiff does not oppose defendant's motion in his opposition brief; indeed, he fails to address the subject at all. Thus the court examines defendant's papers to determine if they are sufficient to support the motion and do not on their face reveal a genuine issue of material fact.

The elements of a cause of action for intentional infliction of emotional distress are: 1) extreme and outrageous conduct by defendant, 2) intention to cause or reckless disregard of the probability of causing emotional distress, 3) severe emotional suffering, and 4) actual and proximate causation of the emotional distress. *See Cole v. Fair Oaks Fire Protection Dist.,* 43 Cal.3d 148, 155 (1970). Although defendant lumps both claims together, the elements for negligent infliction are different. In California, there is no independent tort of negligent infliction of emotional distress. *See Potter v. Firestone Tire & Rubber Co*, 6 Cal.4th 965, 984-5 (1993). Negligent infliction of emotional distress is merely

16

a form of the tort of negligence, requiring a plaintiff to set forth each of the elements of negligence: 1) duty, 2) negligent breach of duty, 3) legal cause, and 4) damages caused by the negligent breach. *See Huggins v. Longs Drug Stores California, Inc.*, 6 Cal.4th 124, 129 (1993); *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 463 (2003). Thus, the elements for a cause of action for negligent infliction of emotional distress include: 1) defendant engaged in negligent conduct involving usual issues of duty and breach, 2) plaintiff suffered serious emotional distress, and 3) defendant's conduct was a substantial factor in causing the emotional distress suffered by plaintiff. *See Burgess v. Superior Court*, 2 Cal.4th 1064, 1072 (1992).

With regard to negligent infliction of emotional distress, plaintiff has alleged no duty owed to him by defendant or a negligent breach of that duty, nor has plaintiff so much as argued the existence of a duty. In the absence of an allegation, evidence or argument on this element, the court cannot find that such a duty was owed or breached.[3]

With regard to intentional infliction of emotional distress, all that is presented by plaintiff's complaint is the *allegation* that defendant's conduct was outrageous and that he suffered severe emotional distress, as he presented no evidence of either, not even his *own* declaration, and did not bother to argue the issue in his opposition. There might be such evidence in plaintiff's deposition, but plaintiff did not submit his own deposition as evidence, and defendant only submitted such excerpts as it chose to support its own arguments. The court did not, nor is it required to scour the *defendant's* evidence in search of a material issue of fact to support plaintiff's allegation. *See Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Thus the court finds that

---

[3] Although there are several types of relationships for which the California courts have found a special duty of care arises, none that the court was able to find apply to a simple employee-employer relationship, particularly one based on contract. *See e.g. Burgess v. Superior Court*, 2 Cal.4th 1064 (1992)(physician-patient relationship); *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal.3d 583, 592 (1989)(psychotherapist-patient relationship); and *Christensen v. Superior Court*, 54 Cal.3d 868, 890 (1991)(relationship between mortuary and close relatives of decedent for whose benefit the mortuary was to provide funeral services).

17

defendant has pointed out the absence of evidence to support plaintiff's claims. Plaintiff must therefore go beyond his pleadings and by his own declarations or discovery set forth specific facts showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 250. This plaintiff has not done. Because of this finding, it is unnecessary to reach defendant's arguments regarding preemption under the Workers' Compensation Act ("WCA") and the Labor Management Relations Act ("LMRA"). [4]

### 8. Plaintiff's Claim for Punitive Damages

Defendant seeks summary judgment on plaintiff's claim for punitive damages because it alleges that none of the individuals that plaintiff accuses of discrimination and retaliation are managing agents and plaintiff has not produced evidence to support a finding by "clear and convincing evidence" that it acted with malice, fraud, or oppression toward plaintiff. Again, plaintiff does not even address his claim for punitive damages in his opposition.

In order for a corporation to be liable for punitive damages, a plaintiff must demonstrate that an officer, director or managing agent engaged in malicious, oppressive or fraudulent conduct. *See e.g. White v. Ultramar, Inc.*, 21 Cal. 4th 563, 572 (1999). By using the term managing agent, officer and director "the Legislature intended to limit the class of employees whose exercise of discretion could result in corporate liability for punitive damages." *Id.* at 573. Managing agents, officers and directors are individuals whose intentions guide corporate conduct and exercise authority over corporate principles. *Cruz v. Homebase*, 99 Cal. Rptr. 2d 435, 441 (2000).

Defendant submitted the declaration of Debra Johnson, a human resources department manager at NUMMI. The Johnson declaration states that Marshall, Valdes,

---

[4] The court does note however, that defendant's argument regarding LMRA preemption is without merit in view of the Ninth Circuit's recent decision in *Detabali v. St. Luke's Hosp.*, 2007 WL 1112679 (9th Cir. April 16, 2007) (where no dispute over the meaning of any terms of collective bargaining agreement, resolution of central issue – whether defendant discriminated against plaintiff in applying the agreement – does not depend on interpretation of agreement and is not preempted).

and Salcido–the three individuals who plaintiff alleges engaged in the discriminatory and retaliatory conduct at issue–have never been officers, directors or managing agents at NUMMI. *See* Declaration of Debra Johnson in Support of Defendant's Motion for Summary Judgment ¶¶ 5-7. Johnson states that these individuals have never exercised authority over NUMMI's corporate principles or rules of general application at NUMMI. Plaintiff presented no evidence or argument in his opposition brief or at the hearing to rebut the Johnson declaration. Nor did he name any other NUMMI personnel falling within the definition. Additionally, plaintiff presented no evidence, much less clear and convincing evidence, of conduct that could be considered malicious, oppressive or fraudulent. As plaintiff bears the burden of proof at trial on his claim for punitive damages, and as defendant has met its burden of pointing out the absence of evidence to support plaintiff's claim, and has indeed put forth evidence that refutes the claim, plaintiff must at a minimum, set forth specific facts showing that there is some genuine issue for trial. *Anderson, 477 U.S. at 250.* Accordingly, the court finds that plaintiff has not met his burden of proof on this issue.

## CONCLUSION

For the reasons stated above, the court GRANTS summary judgment in favor of defendant on all claims and the prayer for punitive damages. The Turner declaration is STRICKEN. Doe defendants, all of whom remain unnamed, are DISMISSED. The trial date is VACATED. The clerk shall close the file.

**IT IS SO ORDERED**.

Dated: April 24, 2007

_____
PHYLLIS J. HAMILTON
United States District Court

19